UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REYNALDA DURON,<br><br>           Plaintiff,<br><br>      v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>           Defendant. | No. 1:21-cv-00149-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**<br><br>**(Doc. 21, 26)** |

### I.     Introduction

Plaintiff Reynalda Duron ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the United States Magistrate Judge.[1] Docs. 21, 26. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

### II.    Factual and Procedural Background[2]

On February 5, 2018, Plaintiff applied for disability insurance benefits alleging a disability onset date of November 29, 2017. AR 182–93. The Commissioner denied the application initially on June 11, 2018 and on reconsideration on October 5, 2018. AR 96, 103. Plaintiff requested a hearing which was held before an Administrative Law Judge (the "ALJ") on June 29, 2020. AR 32–65. On July 20, 2020 the ALJ issued a decision denying Plaintiff's application. AR 17–27. The Appeals Council denied review on December 14, 2020. AR 3–8. On February 5, 2021 Plaintiff filed a complaint in this Court. Doc. 1.

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 8 and 10.

[2] The Court has reviewed the relevant portions of the administrative record including the medical, opinion and testimonial evidence about which the parties are well informed, and thus will not be exhaustively summarized. Relevant portions will be referenced in the course of the analysis below when relevant to the parties' arguments.

### III. **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.   The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of November 29, 2017. AR 19. At step two the ALJ found that Plaintiff had the following severe impairments: status post right sacral fracture and bilateral pubic rami fractures; mild patella alta, degenerative joint disease, and osteoarthritis of the bilateral knees; hallux valgus deformity, hallux rigidus, hammertoes, bunions, equinus, and pes planus of the bilateral feet; mild degenerative disc disease of the lumbar spine; degenerative joint disease, spondylosis, degenerative disc disease, and disc protrusion of the cervical spine; bilateral carpal tunnel syndrome; bilateral medial epicondylitis; ulnar neuropathy; and obesity. AR 20. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: extraperitoneal bladder injury; retroperitoneal hematoma; bilateral tinnitus; cardiac arrhythmia; vitamin D deficiency; onychomycosis; tinea pedis; mild tricuspid regurgitation; generalized osteoarthritis; bilateral lobster claw hand; right ovarian cyst; psychophysiological insomnia; and herpes simplex virus. AR 20. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21.

Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and

concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with the following limitations: can sit six out of eight hours; can stand and walk four out of eight hours; can never climb; can occasionally perform postural activities; can occasionally reach overhead and frequently reach in other directions with bilateral upper extremities; can frequently perform manipulative activities; can have no exposure to hazards.  AR 21–26.

At step four the ALJ concluded that Plaintiff could perform her past relevant work as a hospital admitting clerk, mortgage clerk and customer service representative.  AR 26.  Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her alleged disability onset date of November 29, 2017.  AR 27.

## V.     Issues Presented

Plaintiff asserts two claims of error: 1) that the ALJ erred in formulating the RFC based on his own lay interpretation of the records rather than obtaining an updated assessment of Plaintiff's functional capacity from a medical source; and 2) that the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer clear and convincing reasons for discounting Plaintiff's subjective complaints.

### A.     Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably

attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence. *See* 20 C.F.R. §§ 404.1545(a)(3). The ALJ's duty to further develop the record is triggered only where the evidence is ambiguous or inadequate to allow for proper evaluation. 20 C.F.R. §404.1527(c)(3); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

### B.      Analysis

The non-examining disability determination service (DDS) physicians, Drs. Dale and Tayloe, reviewed Plaintiff's medical file at the initial and reconsideration levels in May and October of 2018, respectively, and concluded that Plaintiff was capable of a range of medium work with some postural limitations (Drs. Dale and Tayloe), some reaching limitations (Dr. Tayloe only), and no other limitations. AR 74, 90. Dr. Wagner performed a consultative examination on April 24, 2018 at the agency's request and opined that Plaintiff could perform essentially a full range of light work (sit, stand, walk 6 of 8 hours) with some postural limitations and no other limitations. AR 439.

The ALJ found Drs. Dale and Tayloe's findings unpersuasive in that they did not sufficiently take into consideration the combined effects of the claimant's impairments, the observation that claimant walked with an antalgic gate, or her upper extremity impairments, considerations which warranted a reduction to light work with manipulative limitations. AR 25. For the same reasons, the ALJ found Dr. Wagner's opinion partially persuasive and determined a

reduced range of light work (stand and walk 4 of 8 hours, not 6 of 8) with manipulative limitations was more appropriate.  AR 25.

In the first 2.5 pages of Plaintiff's 3.5 page argument, Plaintiff offers a number of string citations and assertions explaining why she believes the ALJ's findings were erroneous as a matter of law.  Those assertions centered around three related themes: 1) the RFC is legally deficient because it is not supported by an assessment from a treating or examining medical professional who considered the impact of all of her impairments on her ability to perform work functions; 2) the existence of new medical evidence post-dating the medical opinions triggered the ALJ's duty to develop the record with an updated medical opinion; and 3) having rejected the opinions of the three reviewing physicians in whole or in part, the ALJ then played doctor and relied upon his own lay interpretation of the records.

The ALJ's duty to further develop the record is triggered only where the evidence is ambiguous or inadequate to allow for proper evaluation.   20 C.F.R. §404.1527(c)(3); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  The timeline of events here cannot, in and of itself, establish such ambiguity or inadequacy.

An ALJ is almost always tasked with performing some independent review of medical evidence that was never considered by one of the agency's reviewing physicians and translating the same into an RFC.  This is consistent with the ALJ's role as characterized by the Ninth Circuit. *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015), ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").

The ALJ's duty to develop the record was not triggered by the ALJ's finding that the opinions of Drs. Dale, Taloe, and Wagner, were not entirely persuasive.  The ALJ's role in formulating the RFC is not simply to choose between the existing opinions in the record, or obtain a new one.  The RFC need not mirror any particular opinion in whole or in part, it is an assessment

formulated by the ALJ based on all relevant evidence.  *See* 20 C.F.R. §§ 404.1545(a)(3). The ALJ's deviation from the opinions in the record does not establish that he impermissibly substituted his judgment for that a physician, or impermissibly played doctor in formulating the RFC.  Moreover, in every respect the ALJ formulated an RFC more restrictive than the three doctors.  Thus, to the extent deviating from the existing opinions in the record constitutes "playing doctor," it would have only worked to Plaintiff's advantage if it affected the outcome at all.

There is no controlling precedent imposing a bright line on the permissible scope of an ALJ's independent medical record review.  Cases addressing this issue do, however, frown upon an ALJ independently interpreting "raw medical data" such as complex imaging and laboratory testing results.  They find harmful error particularly where such records are generated following a new injury not previously considered by the reviewing physicians, or a worsening of an existing injury. *See, e.g.*, *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (ALJ formulated claimant's residual functional capacity based on magnetic resonance images without the benefit of any medical opinion about the functional limitations attributable to the impairments depicted in the images); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . .").

As to which records the ALJ independently interpreted here, what they showed, and why the ALJ's independent interpretation thereof was impermissible or inadequate, Plaintiff offers one paragraph of substantive discussion:

> The objective medical evidence subsequent to the State Agency opinions and Dr. Wagner's assessment is significant. As detailed above, subsequent to Dr. Wagner's April 2018 opinion, the record reflects worsening symptoms which resulted in neurological treatment with abnormal findings, and additional physical therapy, and imaging documenting advanced degenerative changes of the cervical spine. Ar. 472-73, 494. On November 26, 2018, MRI of the right knee revealed

marrow edema in the patella, "likely a pain generator associated with full-thickness chondral fissuring." Ar. 707. MRI of the cervical spine in October 2019 revealed moderate degenerative changes of C5-C6 and C6-C7 with mild to moderate canal stenosis and moderate to severe foraminal narrowing. Ar. 709. This was found to "explain bilateral radiculopathy," and this radiculopathy was not considered in the above-cited medical opinions. Ar. 709. The ALJ acknowledged that subsequent findings such as antalgic gait and upper extremity impairments contradict the stale opinions from Dr. Wagner and the reviewing physicians, but then simply speculated as to the impact of those findings.

Br. at 14.

Plaintiff cites a June 27, 2018 neurological examination and a July 19, 2018 cervical MRI. AR 472–73, 494. Although these records post-date Dr. Wagner's April 2018 opinion, they did not post-date Dr. Tayloe's October 2018 findings on reconsideration. Dr. Tayloe specifically referenced and described the cited examination and cervical MRI: "6/27/18 neuro c/o arm pain numbness & tingling," and "July 19, 2018 MRI CS: mild narrowing. Advanced neuroforminal narrowing bilat. C5-C7 may be associated w/chronic nerve root impingement: correlate with radicular symptoms. Advanced DDD C5-C6, C6-C7." AR 86. The ALJ did not independently interpret the June 27, 2018 neurological examination, or the July 19, 2018 cervical MRI.

Plaintiff also cites an October 2019 cervical MRI revealing moderate degenerative changes of C5-C6 and C6-C7 with mild to moderate canal stenosis and moderate to severe foraminal narrowing which was found to "explain bilateral radiculopathy." AR 707, 709. In nearly every respect the findings Plaintiff underscores from the October 2019 cervical MRI were echoed in the July 2018 cervical MRI that Dr. Tayloe had already reviewed, as described above. The only apparent exception is that the July 2018 MRI report said her foraminal stenosis "may be associated with chronic nerve root impingement," and that the physician should "correlate with radicular symptoms," whereas the October 2019 MRI report said the foraminal stenosis "would explain bilateral radiculopathy" AR 494, 709.

Plaintiff contends that "this radiculopathy was not considered" by the three opining doctors.

However as noted by the ALJ, a November 12, 2019 EMG and nerve conduction velocity study (NCV) found "essentially normal" results "with no findings for carpal tunnel syndrome, ulnar neuropathy, *or cervical radiculopathy*." AR 24, 732 (emphasis added).

Notwithstanding the medical expertise required to translate "cervical radiculopathy" into functional terms (expertise the ALJ did not have), noting the presence or absence thereof required no comparable expertise. The November 2019 EMG/NCV results were self-explanatory in that respect: the results showed no cervical radiculopathy. Thus there was no cervical radiculopathy to "translate" info functional terms. The ALJ committed no error in independently reviewing the October 2019 cervical MRI findings which echoed the July 2018 findings already reviewed and "translated" by Dr. Tayloe. Nor did the ALJ err in independently reviewing the November 2019 EMG/NCV study.

Plaintiff further cites a November 26, 2018 MRI of the right knee showing marrow edema in the patella, "likely a pain generator associated with full-thickness chondral fissuring." AR 707. Unlike the records discussed above relating to the cervical spine, this knee MRI did post-date all three opinions in the record with no earlier dated corollary among the records. However, it was not a new impairment as there were pre-existing x-rays and physical examinations considered by Dr. Tayloe on reconsideration. *See* AR 86. Plaintiff did not identify any evidence suggesting a worsening of the impairment in the interim. Moreover, the ALJ's decision does not reflect an improper layperson attempt to translate the MRI results into functional terms:

> A subsequent magnetic resonance imaging (MRI) scan of the claimant's right knee showed full thickness chondral fissuring in the medial patellar facet and superior median ridge, partial chondral loss in the superior trochlea, joint space edema, and early arthrosis of the lateral compartment without generalized/advanced extent. On physical examinations, the claimant was observed to have tenderness throughout the right knee, trace edema, and joint laxity laterally on valgus and varus tests. However, the claimant was also regularly observed to have normal gait and good range of motion of the knees. Moreover, the claimant maintained normal muscle tone, bulk, and strength. She had no synovitis, joint stiffness, or rigidity. Further, treatment has been limited to pain medications. There is no evidence of

> injections or surgical intervention for the claimant's knees (Exhibits 5F/10; 6F/9; 7F/6, 8, 11, 14; 8F/9, 11; 16F/6-7, 18-19, 21, 24-25, 29-30, 34; 17F/2; 18F/2). Accordingly, the record does not support a finding that the claimant's knee impairments are disabling. The limitations to standing and walking for four hours and occasional kneeling adequately account for the claimant's limitations due to these impairments.

AR 23.

The ALJ recited the MRI results demonstrating awareness of the same, and cited physical examination findings arguably indicative of limitations including tenderness, trace edema, and joint laxity.  The ALJ then underscored examination findings indicating otherwise, as well as a treatment regimen limited to pain medications with no injection therapy or surgical intervention.  The ALJ did not refute the existence of any knee limitations, but reduced standing and walking to four of eight hours with occasional kneeling.  The ALJ's reasoning would be sufficient to reject any opinion to the contrary even if the ALJ had obtained an updated consultative opinion to consider the MRI findings.  *See Jackson v. Colvin*, No. 2:15-CV-06123 (VEB), 2016 WL 5947225, at *5 (C.D. Cal. Oct. 12, 2016) (noting that an impairment for which a claimant receives only conservative treatment is an appropriate reason to reject an opinion the impairment is disabling).

In contrast to the above cited caselaw involving new injuries or worsening of existing injuries, Plaintiff identifies no medical, opinion, or testimonial evidence suggesting a new injury or a worsening of the existing knee impairment between the review on reconsideration and her subsequent MRI such that there would be reason to believe the MRI would speak to greater limitations than the record otherwise supported.  *See, e.g.*, *Goodman*, 2019  WL 79016, at *5 (finding that the ALJ erred in adopting state agency consultants' opinions which were rendered before "plaintiff sustained a fall in November 2014" and before "an April 2015 MRI of the lumbar spine [which] showed L1 compression deformity with worsened kyphosis . . ."). No controlling caselaw supports the contention that the existence of an MRI post-dating the medical opinions of

record necessarily creates ambiguity requiring the ALJ to obtain an updated medical opinion or examination. The ALJ committed no error in declining to do so.

### B. Plaintiff's Subjective Testimony

#### 1. Applicable Law

The ALJ is responsible for determining credibility,[3] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other

---

[3] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

11

relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

### 2. **Analysis**

Plaintiff contends the ALJ impermissibly rejected her subjective pain statements for the following reasons: 1) the ALJ rejected her subjective pain primarily based on a summary of the medical evidence despite the governing law prohibiting the rejection of pain testimony solely based on objective medical evidence; 2) the ALJ's summary was insufficiently specific in that the ALJ indiscriminately described normal and abnormal objective medical findings in succession without explaining how those findings relate to or undermine Plaintiff's alleged symptoms; 3) the ALJ underscored the lack of surgical intervention during the relevant period, seemingly discounting the significance of the surgery she had before the relevant period; and 4) the ALJ failed to explain how her activities of daily living are inconsistent with her testimony that she is capable of no activity longer than 15-20 minutes, and that she requires rest breaks throughout the day.  Br. at 16 (citing AR 45–51).

There is no reason to believe the ALJ rejected Plaintiff's testimony exclusively or primarily based on the objective medical evidence.  The ALJ appropriately cited and described the objective medical evidence and reached conclusions about what it showed on balance, conclusions which reflect an implicit rejection of Plaintiff's testimony to the contrary.  Although subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," the objective medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ also noted Plaintiff's activities of daily living and her limited treatment among the pertinent reasoning.  *See* AR 24 (noting she did her own cooking and cleaning, drove, shopped, and performed activities of daily living without assistance); AR 23 (noting that her treatment for her

impairments has been limited to pain medication and physical therapy with no record of injection therapy or surgical intervention since the onset date of disability).

The ALJ did not unduly discount the significance of Plaintiff's pre-disability onset date pelvic surgery by observing that Plaintiff's treatment regimen was overall "limited." The fact that Plaintiff underwent surgery for an acute pelvic fracture following a car accident in 2014 speaks to the significance of that acute injury only at that time, it does not however speak to the significance of the pelvic fracture going forward (post-disability onset date of November 29, 2017). Nor does it undermine the ALJ's characterization of her treatment for the remaining impairments as "limited" following the alleged onset date of disability. The record indeed reflects only pain medication and physical therapy for the myriad other impairments she suffers from, including mild patella alta, degenerative joint disease, and osteoarthritis of the bilateral knees; hallux valgus deformity, hallux rigidus, hammertoes, bunions, equinus, and pes planus of the bilateral feet; mild degenerative disc disease of the lumbar spine; degenerative joint disease, spondylosis, degenerative disc disease, and disc protrusion of the cervical spine; bilateral carpal tunnel syndrome; bilateral medial epicondylitis; ulnar neuropathy; and obesity.

Plaintiff does not dispute that her treatment regimen for those impairments was limited to pain medication and physical therapy, with no injection therapy or surgical intervention. "Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citation and internal quotation marks omitted).

As to the ALJ's findings concerning the inconsistency of her testimony with her activities of daily living, Plaintiff underscores only her testimony that she can do no activity longer than 15-20 minutes and that she requires rest breaks throughout the day. Br. at 16 (citing AR 45–51). Indeed, there is no specific evidence or activity of daily living in the record that could necessarily

refute the notion that Plaintiff cannot do any activity for more than 15-20 minutes. The ALJ cited activities such as non-specific cooking, cleaning, driving and shopping. AR 24. Defendant offers "going to church" as an additional example of an activity noted in the record. The actual testimony was not that she goes to church, but that she met her husband at church specifically, "our home church." AR 55. This does not necessarily imply she still attends church regularly, or that she sits or stands more than 15-20 minutes in succession when she does attend church. Nor is there any reason to believe she cooks, cleans, drives, or shops longer than 15 to 20 minutes in succession. The activities of daily living here were not sufficiently suggestive of an ability to return to her old jobs, nor do the cited activities undermine her testimony that she can only sustain 15 to 20 minutes of any activity.

Notwithstanding, her conservative care coupled with the ALJ's uncontested conclusions regarding the objective medical evidence are sufficient to undermine the notion that Plaintiff cannot perform any activity more than 15-20 minutes at a time. Plaintiff disputes the level of specificity provided by the ALJ in his summary of objective medical evidence in that the ALJ cited normal and abnormal findings without explaining how the normal findings undermine Plaintiff's allegations.

Here, the ALJ's discussion was somewhat emblematic of ALJ opinions generally. Although the ALJ's reasoning was not a model of clarity, it was simple enough to parse the intended inferences without making inferential leaps. The Court will not restate, extensively quote, or paraphrase the ALJ's detailed discussion of each of Plaintiff's myriad impairments absent any specific issue identified therein by the Plaintiff. The paragraph regarding Plaintiff's knee impairments is but one example of the ALJ's writing style, which was adequately articulated:

> The claimant was also treated for mild patella alta, degenerative joint disease, and osteoarthritis of the bilateral knees. An x-ray of the claimant's left knee showed no acute osseous abnormality or significant arthropathy. An x-ray of the claimant's right knee showed mild patella alta, but was otherwise unremarkable. A subsequent

magnetic resonance imaging (MRI) scan of the claimant's right knee showed full thickness chondral fissuring in the medial patellar facet and superior median ridge, partial chondral loss in the superior trochlea, joint space edema, and early arthrosis of the lateral compartment without generalized/advanced extent. On physical examinations, the claimant was observed to have tenderness throughout the right knee, trace edema, and joint laxity laterally on valgus and varus tests. However, the claimant was also regularly observed to have normal gait and good range of motion of the knees. Moreover, the claimant maintained normal muscle tone, bulk, and strength. She had no synovitis, joint stiffness, or rigidity. Further, treatment has been limited to pain medications. There is no evidence of injections or surgical intervention for the claimant's knees (Exhibits 5F/10; 6F/9; 7F/6, 8, 11, 14; 8F/9, 11; 16F/6-7, 18-19, 21, 24-25, 29-30, 34; 17F/2; 18F/2). Accordingly, the record does not support a finding that the claimant's knee impairments are disabling. The limitations to standing and walking for four hours and occasional kneeling adequately account for the claimant's limitations due to these impairments.

The ALJ acknowledged the objective abnormalities identified on imaging and examination. The ALJ then underscored countervailing evidence (introduced by the word "however"), including that Plaintiff walked normally, had full range of motion in her knee, normal strength, and a treatment regimen limited to pain medication. On balance, the ALJ concluded that the knee impairment would not preclude standing and walking 4 out of 8 hours and occasional kneeling. The inference is reasonably supported. Of course, the cited findings could conceivably support a different conclusion as well. But in such circumstances, the ALJ's conclusion controls. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (noting that where the evidence can support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision).

The ALJ similarly provided detailed factual summaries and conclusions regarding the medical evidence related to Plaintiff's extensive impairments. Plaintiff does not specifically dispute any component of the same. She does not attempt to identify any inaccurate citations to the record by the ALJ, incorrect descriptions of the contents thereof, one-sided characterizations as to what they showed on balance, or unsupported inferences as to what RFC restrictions should follow. The Court has no obligation to scan the record in search of the same. *See Ukolov v.*

*Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability."); *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review") (citation omitted).

Plaintiff identifies no harmful error in the ALJ's treatment of Plaintiff's subjective symptomology.

### VI. Conclusion and Order

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied. The Clerk of Court is directed to enter judgment in favor of Defendant Kilolo Kijakazi, acting Commissioner of Social Security, and against Plaintiff Reynalda Duron.

IT IS SO ORDERED.

Dated: **August 2, 2022**      /s/ Gary S. Austin
UNITED STATES MAGISTRATE JUDGE